ASAHI AMERICA, INC., Plaintiff,

v.

The M/V ARILD MAERSK, her engines, boilers, etc., and A.P. Moller (Maersk Line), Defendants.

and

A.P. MOLLER, Third-Party Plaintiff,

v.

WM. McCULLOUGH TRANSPORTATION CO., INC., Third-Party Defendant.

No. 83 Civ. 4387 (KTD).

United States District Court, S.D. New York.

Jan. 8, 1985.

Purrington, McConnell & Agus, New York City, for plaintiff; Stephen A. Agus, New York City, of counsel.

Gillen & Caliendo, New York City, for third-party defendant; Fredric P. Gallin, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

In these days of containerized shipments moving from port-to-port and thence overland, the question of the applicability of the limitation of liability provided for in the Carriage of Goods by Sea Act ("COGSA") to the overland portion of the trip is one which has to fascinate all who are involved in admiralty law. But this case will not provide the resolution to the deep and difficult policy questions involved therein.

The facts, as agreed to among the parties, are as follows. Plaintiff Asahi America, Inc. ("Asahi") purchased a shipment of six "house to house" containers holding pallets of plumbing valves and one container of pallets of pipe fittings. Agreed Statement of Facts ¶ 6. Plaintiff's cargo was shipped on the "M/V Arild Maersk" pursuant to a Bill of Lading dated February 5, 1981. *Id.* The ship's Bill of Lading indicated that the destination of the shipment was "Boston C.Y." Agreed Statement of Facts, Exh. 1 (The "port of discharge" listed is New York but the "place of delivery" listed is "Boston C.Y."). The "M/V Arild Maersk" arrived at Port Newark on approximately February 28, 1981 and the containers were discharged. *Id.* ¶ 8. Local agents for Maersk Line, defendant and third-party plaintiff, Moller Steamship Co., Inc. ("Moller") arranged with third-party defendant William McCullough Transportation Co., Inc. ("McCullough") for overland transportation to the Boston terminal and an inland Bill of Lading was issued. *See id.*

On March 3, 1983, Rosario Carbone, an owner of and the driver for McCullough picked up one of the containers (No. MAEU–2116764) from a pier in Newark for transportation to Boston. After receiving the container, Carbone drove from Newark to Queens. He left the container overnight on the chassis with the cab attached on a local Queens street. *Id.* ¶ 10. On March 4, 1984, at 5:15 a.m., Carbone reported the theft of the container and cab to the 114th Precinct in Queens. *Id.* ¶ 11. More than an hour earlier, at approximately 4:00 a.m., the police had been called to investigate an accident on the Bruckner Expressway in the Bronx. *Id.* ¶ 12. The police discovered the cargo container resting on its side in the median between the Northbound and Southbound Lanes of the Lower Bruckner Expressway. *Id.* The container had been torn apart and separated from the chassis which was no longer at the site. *Id.* The cargo was found strewn along the median for sixty feet. Only eight pallets were found intact. *Id.* Arrangements were made to forward to Boston the recoverable material, *id.* ¶ 13, and surveys were performed, *id.* ¶ 14.

The parties agree that if plaintiff's recovery from McCullough is limited to $500.00

per package, plaintiff is entitled to $22,-500.00 for forty-five pallets. If plaintiff's loss is not so limited, the parties have not stipulated to what the actual loss is.

McCullough argues that the $500.00 per package limitation applies to it because as a subcontractor of Maersk Line, it is accorded the benefit of the COGSA's limitation which is incorporated by reference into the ocean Bill of Lading. McCullough argues alternatively that because it is merely a third-party defendant, it is liable only to the extent that the defendant is found liable. Both of McCullough's arguments, however, lead to the inescapable conclusion that McCullough is liable ultimately for plaintiff's actual loss.

If COGSA does apply to McCullough's trip, it applies in its entirety; the deviation provision as well as the limitation provision would necessarily have to be applied. Thus, assuming arguendo that a per package limitation is applicable, McCullough's overnight deviation to Queens, which I find to be totally unreasonable, would vitiate the effect of such limitation. *See General Electric Co. v. S.S. Nancy Lykes*, 706 F.2d 80, 84–86 (2d Cir.1983) (deviation is unreasonable when it "substantially increases the exposure of cargo to forseeable dangers that would have been avoided had no deviation occurred").

Furthermore, if COGSA does not apply to the inland transportation leg of the trip to Boston, then through the application of either state law or the Interstate Commerce Act, McCullough would be nonetheless liable to plaintiff for its actual loss. Thus, under the circumstances of this case, I need not reach the issue of whether COGSA's limitation would apply to the overland portion of the shipment of plaintiff's goods.

I note also that there is no merit to McCullough's argument that its liability is limited to $500.00 per package because Maersk's liability is so limited and Maersk's action against McCullough is for indemnification. Maersk's liability, however, is not limited under COGSA, as McCullough's deviation is imputable to Maersk. It is stipulated that Maersk arranged for inland shipment by McCullough. McCullough is clearly the sub-contractor of or agent for Maersk as plaintiff contracted only with Maersk for delivery in Boston. *See Agrico Chemical Co. v. S.S. Atlantic Forest*, 459 F.Supp. 638, 647 (E.D.La.1978), *aff'd*, 620 F.2d 487 (5th Cir.1980).

Accordingly, I conclude that plaintiff is entitled to recover an amount equal to its actual loss without the application of COGSA's limitation. Plaintiff's damages shall be fixed by Magistrate Grubin after inquest.

SO ORDERED.