**VISTAR, S.A., Plaintiff,**

v.

**M/V SEALAND EXPRESS, et al., Defendants.**

**Civ. A. No. H–83–3903.**

United States District Court,
S.D. Texas,
Houston Division.

June 23, 1987.

Frederick M. Boss, Houston, Tex., for plaintiff.

Joseph Newton, Houston, Tex., for M/V Sea Land Express.

Humberto L. Juarez, Jr., Laredo, Tex., for Victory Transfer.

Michael E. Warrick, Houston, Tex., for Carolina Cas. Ins.

## MEMORANDUM AND ORDER

DeANDA, District Judge.

Pending before the Court are Plaintiff's motion to amend final judgment and Defendant Sea–Land Service, Inc.'s motion for final judgment on mandate. For the following reasons, the Court orders that Plaintiff's motion is denied and Defendant's motion is granted.

The relevant facts are set forth in the Court's prior findings of fact and conclusions of law. This is a suit for damage to a varnishing machine sustained during transport from LeHarve, France, to Nuevo Laredo, Mexico. The varnishing machine was packed for transportation, presumably intact, in a single, large, wooden case. Defendant Sea–Land Service (Sea–Land) took delivery from the shipper in LeHarve and issued its bill of lading covering the movement to Nuevo Laredo. The case containing the varnishing machine was discharged from Sea–Land's vessel in Houston and delivered to Defendant Victory Transport Company, Inc. (Victory) under contract with Sea–Land, to complete the passage to Nuevo Laredo. Victory's driver took the wrong route and drove under a railroad bridge with inadequate vertical clearance. The package containing the varnishing machine struck the bridge and the machine was damaged. Plaintiff claims damages of $90,446.86.

At trial on the merits, Defendants contended that, by agreement of the parties, the terms of Carriage of Goods By Sea Act, 46 U.S.C. §§ 1300 *et seq.,* ("COGSA"), were applicable to the entire movement from Le-Harve to Nuevo Laredo. Defendants contended that Plaintiff's loss was due to negligent navigation and thus excused by 46 U.S.C. § 1304(2)(a). In the alternative, Defendants argued that 46 U.S.C. § 1304(5) limited the liability of the carrier for cargo damage to $500.00 per package.

After a bench trial, the Court decided that Defendants had not committed an unreasonable deviation, and that the loss was due to negligence in navigation within the meaning of 46 U.S.C. § 1304(2)(a). The Court entered judgment that Plaintiff take nothing. The Court did not reach the damages question.

On appeal, the Fifth Circuit reversed this Court's holding that the loss was due to negligent navigation. 792 F.2d 469. The Court of Appeals held that COGSA's negligent navigation defense did not apply. The Court of Appeals, however, affirmed this Court's decision that the trucker's error did not constitute a deviation from course within the meaning of COGSA. The Fifth Circuit wrote that since "[t]he district court found that no evidence was presented that the driver intentionally and deliberately deviated from the instructed route, [w]e believe that [plaintiff's] appellate brief cannot fairly be read as challenging the correctness of this finding ..." This holding by the Fifth Circuit means that the variation in route did not constitute a deviation under COGSA sufficient to impair Sea–Land's other contractual defenses. The case was remanded for a determination of damages and entry of judgment consistent with the opinion on appeal.

At the trial, it was shown that Plaintiff's shipment consisted of one package. The bill of lading stated that in the event of damage of goods exceeding $500.00 per package, the value of the goods shall be deemed to be $500.00 per package or unit, unless the nature and higher value of the goods have been declared by the shipper and extra charge paid as provided in the carrier's tariff. [Plaintiff's Exhibit 10, at n. 17]. COGSA provides that neither the carrier nor the ship shall become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500.00 per package, unless the nature and value of such goods have been

declared by the shipper before shipment and inserted in the bill of lading. 46 U.S.C. § 1304(5). This provision of COGSA has been given effect repeatedly. *See, e.g., Gebr. Bellmer K.G. v. Terminal Services Houston, Inc.,* 711 F.2d 622 (5th Cir.1983) (four crates loaded on container flat were four COGSA packages). *Wuerttembergische v. M/V Stuttgart Express,* 711 F.2d 621 (5th Cir.1983) (winding block for nuclear reactor enclosed in crate was COGSA package); *Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415 (5th Cir.1981) (crate of "machinery" was COGSA package).

In its response to Defendant's motion, Plaintiff argues that Defendant's actions amounted to unreasonable deviation, which would bar the COGSA package limitations from taking effect. Each case cited by Plaintiff, however, involves a deliberate decision by the carrier to depart from a direct and conventional route to further its own commercial goals.[1] At trial, the Court found that the deviation of Victory's truck from its designated route was unintentional and could not be construed as unreasonable. The Court of Appeals affirmed this finding. The point now urged by Plaintiff has already been decided adversely to it and is not open for review. *See, generally, City of Orlando v. Murphy,* 94 F.2d 426 (5th Cir.1938); *In re N.V. Zuid–Hollandsche Scheepvaart et al.,* 64 F.2d 915 (5th Cir.1933). Thus, the $500.00 per package limitation was not waived by the driver's error.

■ In the alternative, Plaintiff argues that the varnishing machine was not a package within the meaning of COGSA. Plaintiff relies on *Allstate Ins. Co. v. Inversiones Navieras Imparca,* 646 F.2d 169 (5th Cir.1981), in support of this proposition. *Allstate Insurance Co.,* involved 341 cartons of electronic equipment that were loaded into the carrier's container and described in the bill of lading as "one container with 341 cartons." The Court held that where the shipper placed goods in packages, as used in the ordinary sense of the word, and then loaded those packages into a container furnished by the carrier, and the number of packages in the container was disclosed to the carrier in the bill of lading, each package within the container constituted one "package" for the purposes of § 1304(5). 646 F.2d at 172–73. In the case at bar, Plaintiff packed the varnishing machine in its own case and delivered it to Defendant for carriage. The Court finds that this crate was a single package within the meaning of COGSA.

Plaintiff next asserts that inquiry as to the "customary freight unit" is called for in this case. This is necessary, however, only if the goods are not shipped in a package. 46 U.S.C. § 1304(5). Typical of cases in which the "customary freight unit" is the limitation unit are *Waterman S.S. Corp. v. United States S.R. & M. Co.,* 155 F.2d 687, 693 (5th Cir., 1946), *cert. denied,* 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946) (pieces of structural steel shipped unpackaged); *The Bill,* 55 F.Supp. 780 (D.Md.1944), *aff'd.* 145 F.2d 470 (4th Cir.1944) (bulkoil); and *Caterpillar Americas Company v. S.S. Sea Roads,* 231 F.Supp. 647 (S.D.Fla.1964) (tractor delivered to vessel under its own power). The Court believes that none of these cases applies to the case at bar. Thus, Plaintiff's customary freight unit argument is without merit.

■ It is not unfair to limit Vistar's recovery to $500.00 because both the COGSA limitation provision and the bill-of-lading term provide that the $500.00 limitation is applicable only if the shipper has not declared a higher value. Defendant's bill of lading has a clear provision on its face for a declaration of higher value, and a plain warning as to the effect of not declaring

---

1. *Yutana Barge Lines, Inc. v. Northland Svcs.,* 574 F.Supp. 1003, 1005 (W.D.Wash.1983) (transporting cargo by tandem tow instead of single tow increased risk of loss, constituted unreasonable deviation); *Spartus Corp. v. S/S Yafo,* 590 F.2d 1310 (5th Cir.1979) (substantial increase of risk is unreasonable); *The Pelotas Compania De Navegacao Lloyd Brasileiro v. David G. Evans Coffee,* 66 F.2d 75, 77 (5th Cir.1933) (100 mile deviation); *Asahi America, Inc. v. M/V Arild Maersk,* 602 F.Supp. 25, 27 (S.D.N.Y.1985) (Defendant's driver made a voluntary, affirmative decision to leave prescribed route and make unscheduled overnight stop).

such value. [Plaintiff's exhibit 10]. Defendant points out that the shipper chose not to declare a higher value, presumably to avoid the ad valorem freight charge. Plaintiff should not now be heard to complain of the application of the clear limitation terms of COGSA and the bill of lading.

Plaintiff, finally, argues that the provisions of the bill of lading are merely terms of the contract of carriage which, like other contractual terms, call out for judicial interpretation in case of dispute, citing *Croft & Skully Co. v. M/V Skulptor Vuchetich*, 664 F.2d 1277, 1280 (5th Cir.1982). If this is the case, then straightforward contract analysis is called for in this action to determine the intent of the parties, and entries on the bill of lading are important evidence of the intent of the parties to the shipping contract. *Binladen BSB Landscaping v. M/V "NEDLLOYD ROTTERDAM"*, 759 F.2d 1006, 1012 (2d Cir.1985), *cert. denied*, 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985). In determining the intent and mutual understanding of the parties, the Court is permitted to examine the documents indicating the intent of the parties to determine the meaning of the term "package." *Crispin Co. v. M/V Morning Park*, 578 F.Supp. 359, 360 (S.D.Tex.1984).

In this action, the nature of goods being shipped is fully disclosed in a twenty-five word description in Spanish in the bill of lading. The word "caja" (meaning "box" or possibly "package") which precedes that twenty-five word description is significant. No where in the description is an attempt to declare higher value, escaping the COGSA package limitation.

Plaintiff at this point refers the Court to cases which have held that similar notations did not stand for "packages" for COGSA purposes, citing *Binladen BSB Landscaping* (where in bill of lading under column labeled "Number of Packages" were listed the number of containers shipped and total number of plants in each container, containers found not to be "COGSA packages."); *Bumblebee Seafoods v. S.S. KIKU MARU*, 1978 A.M.C. 1586 (D.Md.1978) (where under "Packages" column on bill of lading was the number

67,222, representing number of fish shipped, court holding that the number 67,-222 did not constitute COGSA packages). The Court does not see these cases raise issues around facts where several units were packed within a container. This case involves a single, albeit an expensive, piece of machinery, packed intact in a single wooden box.

Plaintiff also refers the Court to cases involving large pieces of machinery where the machinery was not deemed to be a COGSA "package" and the Court made the determination of what was a customary freight unit, citing *Hartford Fire Insurance Co. v. Pacific Far East Line*, 491 F.2d 960, 965 (9th Cir.1974) (transformer attached to wooden skid for purposes of protection and facilitation of movement not COGSA package); *Gulf Italia Co. v. American Export Lines*, 263 F.2d 135 (2d Cir.1959) (tractor partially encased with wooden planks, partially covered with paper packing was not COGSA package); *Malloy v. Oregon Rainbow*, 1980 A.M.C. 2183 (M.D.Fla.1980) (yacht shipped in cradle was not COGSA package); *Eaton Corp. v. S.S. Galeona*, 474 F.Supp. 819 (S.D.N.Y.1979) (unpackaged tractor was not COGSA package); *Kansas Packing Co. v. Atlantic Mutual Insurance*, 1984 A.M.C. 277 (S.D.N.Y.1983) (generator's loss estimated on basis of 1.5 ton "customary freight unit"). The Court finds none of these cases are applicable to the case at bar. The varnishing machine was encased in a single wooden box thus it was not a piece of machinery only partially packaged. No determination of a customary freight unit is then necessary based on this argument.

Plaintiff also plead for $30,150.00 in attorney's fees in its original complaint. Although Congress undoubtedly could have explicitly provided for the award of attorney's fees to a party prevailing in a suit based upon COGSA, no such statutory authorization appears in the Act. *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 (5th Cir.1980). Nor is there any other federal statutory authorization for the award of attorney's fees in this

type of admiralty proceeding. *See Demsey & Associates, Inc. v. S.S. Sea Star,* 500 F.2d 409, 411 (2d Cir.1974). Absent some statutory authorization, the prevailing party in an admiralty case is generally not entitled to an award for attorney's fees. *Sandoval v. Mitsui Sempaku K.K. Tokyo,* 460 F.2d 1163, 1171 (5th Cir.1972); *American Union Transport Co. v. Aquadilla Terminal, Inc.,* 302 F.2d 394, 396 (1st Cir. 1962); *Compagnia Amonima Venezelana de Navegacion v. A.G. Solar & Co.,* 1977 A.M.C. 1786, 1789 (S.D.Tex.1977). *See also, Crispin Co. v. M/V Morning Park,* 578 F.Supp. 359 (S.D.Tex.1984); *Platoro Ltd., Inc. v. Unidentified Remains, Etc.,* 695 F.2d 893, 905–06 (5th Cir.1983), *cert. denied* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed. 2d 89 (1983); *Brazosport Towing Co., Inc. v. Donjon Marine Co., Inc.,* 556 F.Supp. 640, 644 (S.D.Tex.1983). Although there are some judicially created exceptions to this general rule, none are applicable here. On this basis, the Court

ORDERS that Defendant's motion for final judgment on mandate is GRANTED and Plaintiff's motion to amend final judgment is DENIED. Plaintiff shall take $500.00 in actual damages in accordance with the provisions of COGSA plus pre-judgment interest thereon from three months following the date of shipment, June 6, 1982, to present at 7.00% per annum for a total of $703.43. Defendant is to pay all taxable costs, and post judgment interest at 7.00% per annum until judgment is paid.

This is a Final Judgment.